## Case No. 4,938.

### The FOREST QUEEN.

[3 Ben. 181.] 1

District Court, N. D. New York. March, 1869.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Geo. B. Hibbard. for libellants.
Albertus Perry, for claimants.

HALL, District Judge. Upon the pleadings and proofs, it is entirely clear that the collision was caused by gross negligence, or grosser unskillfulness; but it is not entirely certain whether it was caused by a fault or faults imputable to only one of the vessels, or whether both vessels were in fault. It is, however, certain, that neither of the vessels had a proper lookout, at the time when the services of a competent and faithful lookout would have been of the most essential service in preventing the collision; and it is. therefore, most likely that both were in fault.

The absence of a proper lookout, and the want of careful attention to his duties, on the part of the officer of the deck, of each of the vessels, may sufficiently account for the absence of any testimony showing what particular fault or faults should be deemed the more immediate and real cause of the collision; and these circumstances may well be considered as the remote, if not the proximate, causes of the disaster.

The evidence in the case is, in most respects, unreliable and unsatisfactory; and there is not only much conflicting testimony, but it is also quite difficult, if not impossible, to reconcile many of the statements of the witnesses, on either side, with some of the admitted facts of the case.

As examples of the difficulty just alluded to, it may be useful to refer to the testimony of the master of each of the colliding vessels, in respect to their relative position, at the time each observed the change in the course of the other vessel;—to which change he attributes the collision. It should, first, be remarked, that the vessels were running in nearly opposite directions—there being but a single point between the lines of their respective courses—and that the speed of the propeller was about eight miles, and that of the schooner about nine miles, an hour. The testimony of the master of the propeller tends to show that the change of the schooner's course was made when she was about eighty rods distant, and from two to two and a half points off the propeller's port bow. Now, if this is correct, the schooner—fixing her position at two and one-fourth points off the propeller's bow—was more than thirty rods to the northward of the line of the propeller's course, and only about seventy-four rods to the eastward, and it is incredible that the schooner could have changed her course, as stated, and have reached and struck the propeller, except by a well-directed and persistent effort to follow the propeller, and produce a collision. On the other hand, the testimony of the master of the schooner tends to show, that the change of course made by the propeller, was made four or five minutes before the collision, and when she was four points off his starboard bow—a statement more incredible than that of the master of the steamer, as the bearing was more off the bow, and the schooner's speed exceeded that of the propeller;—especially, as the propeller's wheel was ported at the time of the change, and the testimony of the master of the schooner is. that the course of his own vessel was not changed, until it was changed under a hail from the propeller; and as the position of the claimant is, that it was not changed until it was apparently necessary, to lessen the chances, or diminish the force of the collision, which. as the event proved, it was then too late to avert. In truth, this case is one in which no very satisfactory conclusion in regard to the material questions of fact. controverted at the hearing, can be reached; but. unless several witnesses have been guilty of deliberate perjury, it must be conceded, (notwithstanding there. is testi-

mony from other witnesses which would lead to a different conclusion,) that each vessel exhibited her proper signal lights; and, that such lights might have been seen at a distance of more than two, if not more than three, miles, on the night of the collision. It is, therefore, clear that the collision was caused by negligence or fault in the management of these vessels, or of one of them.

Upon the whole evidence, it is clear, that the propeller was in fault, because she had no competent lookout stationed and kept on duty, during the time when the services of a lookout were most essential, for the purpose of preventing the collision which occurred. It is quite certain that, with a proper lookout, and a competent officer of the deck, in the best position to secure prompt action on the part of the engineer and wheelsman, the collision might have been avoided. The officer of the deck was at a distance from the point where he should have been, to communicate instant orders to his engineer; and the consequence was, that no orders to stop the engine were given. This should have been done, and the omission must be considered as a fault which may have contributed to the collision.

It is clearly shown that the schooner was in fault, in not having a competent lookout stationed and kept in the faithful discharge of that duty. The failure to observe the colored lights of the propeller shows that no sufficient lookout was kept by any one; and the master, knowing that the lookout had been sent aft, did not use ordinary care in the discharge of his duty as officer of the deck. The negligence thus distinctly proved, the testimony on the part of the libellants, and other circumstances, create grave doubts in regard to the correctness of the statements in respect to the steady and continued course of the schooner; and these doubts are much increased by the difficulty of accounting for the collision, upon the case made by the claimants—assuming a change of course, on the part of the propeller, when her light was four points off the starboard bow of the schooner.

Besides the faults which have been already imputed to the propeller and schooner, it is now quite certain that, if the propeller had put her helm hard-a-starboard, when it was put hard-a-port, there would have been no collision, if the schooner's course and change of helm were such as appears from the testimony; and if the propeller's course and change were those stated by her master, it is also quite clear that there would have been no collision, if the schooner's helm had been put hard-a-port, when it was put hard-a-starboard, or even if the schooner's course had remained unchanged. The change of course was, doubtless, made by both vessels, very near the same time, and each must have swung about three and a half or four points

—or one somewhat more, and the other about as much less, than that—in order to strike at the angle they did actually strike, as established by the pleadings and evidence. Indeed, the testimony of the master of the propeller even indicates a greater change than that, or nine or ten points of change, to be divided between the two vessels.

The change made by the schooner, under the hail made by the master of the propeller, cannot be a fault chargeable to the schooner; and my experience in collision trials has satisfied me that a master who assumes to take command of an approaching vessel, with which his own is likely to come in collision, generally acts unwisely. The master of a steam vessel is rarely called upon to direct a change of helm on an approaching sailing vessel, unless his own negligence has previously brought the two vessels into imminent danger of collision.

From the best consideration I have been able to give the case, it must be considered one of mutual fault, and the damage to both vessels must be aggregated, and then equally apportioned; and no costs will be allowed to either party, as against the other.